# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **ANTHONY PATRICK MURPHY**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**RANDALL-REILLY LLC,** an Alabama limited liability company,<br><br>*Defendant.* | CASE NO.<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Anthony Patrick Murphy ("Plaintiff" or "Murphy") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Randall-Reilly, LLC ("Randall-Reilly") to stop Defendant's practice of sending unsolicited text messages to the cellular telephones of consumers throughout the nation, and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Defendant Randall-Reilly is a provider of business to business data and marketing services, as well as media and events for the transportation industry.

2. In the present case, Defendant contacts potential clients by sending solicitation text messages to their cellular phones in an effort to recruit drivers for Uber, the on demand transportation service.

3. But, unfortunately for consumers, Defendant casts its marketing net too wide. That is, when promoting services on behalf of Uber, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of unwanted solicitation text messages to consumers' cellular telephones without their prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4. The TCPA was enacted to protect consumers from unsolicited text messages like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited text messaging activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs.

**PARTIES**

5. Plaintiff Anthony Patrick Murphy resides in Mansfield, Texas.

6. Defendant Randall-Reilly is an Alabama corporation headquartered in Tuscaloosa, Alabama. Defendant Randall-Reilly does business in this District.

**JURISDICTION AND VENUE**

7. This Court has federal question subject matter jurisdiction over this TCPA action under 28 U.S.C. § 1331.

8. The Court has personal jurisdiction over Defendant because it solicits significant business in this District, and the text messages at issue were directed to and received in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and the causes of action arose, in substantial part, in this District. Venue is additionally proper as Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

**Randall-Reilly Sends Consumers Unsolicited Text Messages Through Its Smart Rhino Labs Division**

10. Randall-Reilly is a company that provides data, advertising, and custom marketing services to clients in the transportation industry, including driver recruiting.[1] [2]

11. On March 22, 2018, Randall-Reilly acquired Smart Rhino Labs.[3] Smart Rhino Labs offers recruitment marketing services and specializes in the trucking and on-demand transportation niche.[4] Specifically Smart Rhino Labs provides mobile recruiting and marketing.[5]

12. Randall-Reilly acquired Smart Rhino Labs to generate more leads for its existing clients and to acquire Smart Rhino Labs' existing transportation industry clients.[6]

---

[1] https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=826131

[2] https://www.randallreilly.com/

[3] "SLC-Based Smart Rhino Labs Acquired By Randall-Reilly", Silicon Slopes (March 22, 2018), https://siliconslopes.com/slc-based-smart-rhino-labs-acquired-by-randall-reilly-cbb0719c4251; this was also advertised on Smart Rhino Labs Facebook Page, Smart Rhino Labs, Facebook, https://www.facebook.com/SmartRhinoLabs/; and Randall-Reilly also owns the Smart Rhino Labs Trademark. Smart Rhino Labs Trademark Details, Justia.com, https://trademarks.justia.com/859/73/smart-rhino-85973317.html.

[4] https://www.linkedin.com/company/smart-rhino-labs/

[5] https://www.smartrhinolabs.com/

[6] "Randall-Reilly enhances driver recruiting, lead-gen capabilities with Smart Rhino Labs acquisition," CCJ Digital (Mar. 22, 2018), https://www.ccjdigital.com/randall-reilly-enhances-driver-recruiting-lead-gen-capabilities-with-smart-rhino-labs-acquisition/ (Smart Rhino Labs "has the technologies and processes *that leverage SMS . . . phone technologies* for nurturing leads"; one of the "primary goals with this partnership is to continue to help fleets improve their rate of hire."); https://www2.staffingindustry.com/site/Editorial/Daily-News/Data-provider-Randall-Reilly-acquires-recruitment-firm-Smart-Rhino-Labs-45465 ("We have begun to share a growing recruiting client-base for the past two years, and they [Smart Rhino Labs] have been an ideal partner."); https://hub.randallreillycustom.com/h/i/423572562-how-smart-rhino-labs-strengthens-randall-reilly ("Smart Rhino Lab's data-driven approach to high volume recruiting bolsters Randall-Reilly's ability to effectively serve its client as well as open up exciting possibilities.").

13. Since the acquisition, Smart Rhino Labs has been converted into a "Division" of Defendant Randall-Reilly with Smart Rhino Labs' co-founder Scott Evanson as its CEO:[8]



14. Through its Smart Rhino Labs Division, Randal Reilly mass texts consumers without their consent in an attempt to solicit their business and earn money. Among other businesses Randall Reilly provides mass text messaging services for Uber:[14]

---

[8] Scott Evanson, Linkedin, https://www.linkedin.com/in/scott-evanson-809603b.

[14] "What Does UberFreight Mean for Driver Recruiting?", Randall-Reilly (Jun. 22 2017), https://www.randallreilly.com/what-does-uberfreight-mean-for-truck-recruiting/; Recruiting for Good: Brett Evanson Founder and CTO of Smart Rhino Labs, Biz 4 Good Show, Episode 21, http://biz4goodshow.com/ep21-recruiting-for-good-brett-evanson-founder-and-cto-of-smart-rhino-labs/ ("Smart Rhino Labs does marketing services for recruiters. . . Companies they work with: 10 of the top 10 trucking companies. Fed Ex and JB Hunt. *Also, Uber*.").



…



15. Randall Reilly sends the text messages on behalf of Uber and other customers using an autodialer supplied by call center software company Five9.[17] [18] As one of Defendant's Account Services Managers explains, Smart Rhino Labs has been using a Five9 autodialer in all

---

[17] Corbin McCabe, Linkedin, https://www.linkedin.com/in/corbinmccabe (Corbin McCabe is the Account Services Manager at Smart Rhino Labs, and he admits to using an autodialer in his capacity at Smart Rhino Labs).

[18] See Five9's webpage at https://www.five9.com/.

5

aspects of its business since 2013: "***The Sales and Recruiting Department of [Smart Rhino Labs] uses Five9*** to handle inbound and outbound calls for 2 major branches of our business. ***Five9 helps us communicate with and convert our leads. It also allows us to reach out to and monetize leads in an automated fashion***..."[19] In fact, Defendant's Account Services Manager has posted a public review of the Five9 autodialer, giving it score of 10 out of 10:[21]



16. Defendant sends text messages using its Five9 autodialer from telephone number 920-365-3780 and possibly from other telephone numbers.

17. In these messages, Defendant invites consumers to sign up to drive for Uber. Upon information and belief, Defendant earns a commission for each person they direct to sign up with Uber.

18. The TCPA prohibits companies from sending text messages to cell phones without consent.

19. Yet in violation of this rule, Defendant fails to obtain any prior consent to send these autodialed text messages to cellular telephone numbers.

---

[19] *Id* (emphasis added).

[21] See: "Review: "Five9 - The Swiss Army Knife Solution for Contact Centers," Corbin McCabe, Oct. 5, 2017, https://www.trustradius.com/reviews/five9-virtual-contact-center-2017-10-04-15-46-44 (noting also that Corbin McCabe is a verified user writing a vetted review).

6

20.     Defendant knowingly sent (and continues to send) autodialed text messages without the prior express consent of the recipients.

21.     Defendant not only invaded the personal privacy of Plaintiff and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

22.     Defendant sent the same (or substantially the same) text messages *en masse* to cellular telephone numbers throughout the United States.

### FACTS SPECIFIC TO PLAINTIFF ANTHONY PATRICK MURPHY

23.     On April 18, 2018 at 10:50 AM, Plaintiff received a text message on his cellular telephone from Defendant using phone number (920) 365-3780:



24.     Plaintiff replied "Who is this" to the unsolicited text message he received on April 28, 2018 at 11:50 AM, but there was no response.

25.     Upon investigation, when 855-255-8132 is called, the company is identified as being Uber.

26.     When the consumer agrees to sign up to drive for Uber and answers all the questions asked by the agent, the consumer is then sent an email to set up an "UBER Driver-Partner Account" from a "driversupport.help" email address:

> **Simple Steps to Complete your UBER Driver-Partner Account**  Inbox  x
>
> **Uber Driver Application** <noreply@driversupport.help>
> to me
>
> Click Here to Sign-In: https://bonjour.uber.com Username: [email] Password: 5182185188000

27. The domain driversupport.help is registered to Smart Rhino Labs (along with their CTO Brett Evanson), which is a division of Defendant Randall-Reilly:[24]

> Admin Name: Brett Evanson
> Admin Organization: Smart Rhino Labs
>
> Tech Name: Brett Evanson
> Tech Organization: Smart Rhino Labs
>
> Billing Name: Brett Evanson
> Billing Organization: Smart Rhino Labs

28. Plaintiff is not a customer of Defendant nor does he have any business relationship with Defendant.

29. Plaintiff had not been looking or searching for opportunities to drive with Uber.

30. Plaintiff never consented in writing or otherwise to receive text messages on his cellular telephone from Defendant.

31. Plaintiff has never provided his telephone number to Defendant, and has never requested that Defendant send him text messages or offer its services.

---

[24] Driversupport.help, Whois Domain Lookup, https://www.networksolutions.com/whois/results.jsp?domain=driversupport.help; CTO is Brett Evanson, See "Randall-Reilly enhances driver recruiting, lead-gen capabilities with Smart Rhino Labs acquisition," CCJ Digital (Mar. 22, 2018), https://www.ccjdigital.com/randall-reilly-enhances-driver-recruiting-lead-gen-capabilities-with-smart-rhino-labs-acquisition/.

32. Simply put, Plaintiff has never provided any form of prior express consent to Defendant to contact him.

33. By sending unauthorized text messages to consumers' cellular telephones as alleged herein, Defendant has caused consumers actual, concrete harm, including the aggravation, nuisance, loss of time, and invasions of privacy that result from the receipt of such text messages, lost value of cellular services paid for, and a loss of the use and enjoyment of their phones, including wear and tear to their phones' data, memory, software, hardware, and battery components, among other harms. In the present case, a consumer could be subjected to many unsolicited text messages, as Defendant fails to obtain a consumer's express consent before sending the unwanted text messages.

34. To the extent the text messages were sent on Defendant's behalf to consumers, Defendant authorized the use of its telephone number, otherwise controlled the content of the messages, and knew of, but failed to stop, the sending of the text messages in violation of the TCPA.

## CLASS ALLEGATIONS

35. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the Class defined as follows:

> All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) to the person's cellular telephone number, (3) using an automatic telephone dialing system, and (4) for whom Defendant does not claim it has consent, or claims it obtained consent in the same manner as Defendant claims it supposedly obtained consent to send automated text messages to the Plaintiff.

36. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Class and the manner by which Defendant claims it obtained prior express consent.

37. **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant sent autodialed text messages to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records and by reference to other objective criteria.

38. **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Class on which every Class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Class includes, without limitation:

    (a) whether Defendant's conduct constitutes a violation of the TCPA;

    (b) whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

    (c) whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct; and

    (d) whether Defendant obtained prior express consent to contact any class members.

39. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes, and if Defendant violated the TCPA by sending text messages to Plaintiff then it violated the TCPA by sending text messages to the other class members. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

40. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

41. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

42. **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express consent to text message and whether Defendant used an ATDS go to the very heart of the case and are facts on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

43.     **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Text Message No Consent Class)**

44.     Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

45.     Defendant sent solicitation text messages to cellular telephone numbers belonging to Plaintiff and other members of the Class without first obtaining consent to send them such autodialed text messages.

46.     Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an

automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

47. By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Class without their prior express written consent, and by utilizing an automatic telephone dialing system to send those text messages, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

48. As a result of Defendant's conduct, Plaintiff and the other members of the Text Message No Consent Class are entitled to an order enjoining Defendant from engaging in further TCPA violations and a minimum of $500.00, and a maximum of $1,500.00, in statutory damages for each violation of such act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Murphy, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representatives of the Class and his counsel as Class Counsel;

b) An award of actual and statutory damages;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

e) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Class; and

f) Such further and other relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff requests a trial by jury.

Respectfully submitted,

Dated: June 19, 2018				**ANTHONY PATRICK MURPHY**, individually and on behalf of all others similarly situated,

By: s/ Dana Opitz
     Dana Opitz

Dana Opitz
3108 San Sebastian
Carrollton, Texas 75006
(682) 309-4862
danamarie15@gmail.com

Stefan Coleman
Law@StefanColeman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd., 28th floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946
(Admitted to the Northern Dist of Texas)

Avi R. Kaufman*
Kaufman P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

Attorneys for Plaintiff and the Classes

*Pro Hac Vice Application to be Filed